## Peabody et al. v. Dewey.

1. CONTRACTS—*Identification of Things Referred to by Parol Evidence.*—When the identity of a thing referred to in a written contract is left uncertain, it is proper to hear parol evidence to determine which of two or more things answering the description, was meant by the parties.

**Memorandum.**—Assumpsit. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this Court at the October term, 1893, and affirmed. Opinion filed February 1, 1894.

The statement of facts is contained in the opinion of the court.

EDWIN BURRITT SMITH and JAMES D. ANDREWS, attorneys for appellants.

RUNYAN & RUNYAN, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This cause was submitted to the court below without a jury.

The appellants are mortgage loan agents, in Chicago, and the appellee is engaged in the real estate business for himself and also as an agent or broker for others in real estate and mortgages.

In the summer of 1890, the appellee applied to the appellants for a loan to himself of $250,000, on certain of his real estate.

In furtherance of the transaction he signed a written contract, called an application for a loan, whereby he engaged appellants to procure for him the loan in question for a commission of two and one-half per cent on the amount thereof.

It was set out in the application that the loan should be secured by a "principal note and interest notes and a mortgage or trust deed (in your usual form) conveying," etc., certain described premises.

Peabody v. Dewey.

The appellants procured the loan to be agreed to be made to appellee, by a correspondent of theirs living in Philadelphia.

When the requisite papers were prepared and presented to appellee for execution, he observed that the loan and interest were made payable, by the terms thereof, "in the gold coin of the United States of the present standard of weight and fineness," and on that account, only, refused to execute them.

The question is: What is the effect of the agreement, or application, signed by appellee, and did appellee agree thereby to secure the repayment of the loan by executing papers requiring its repayment to be made in gold coin?

The application which was signed by appellee was one of a printed form that had been used by appellants in their business for many years.

What was the "usual form" of papers employed by appellants in their business, was a question of fact.

On three former occasions, in 1885 and 1886, appellants had negotiated loans to appellee, in each of which transactions the appellee had signed applications exactly like the one employed in this transaction, so far as the printed part of it relating to this agreement to execute notes and mortgages in accordance with the "usual form" used by appellants, was concerned, and the notes and mortgages he executed to secure those loans did not contain a gold clause. As agent for others he had also had occasion about two years before, to become acquainted with the forms used by appellants.

The use of notes and mortgages containing a gold clause did not begin in appellant's business until about nine months previous to the making of the application for the loan in question, and no mention was made to appellee at the time he made the application, and he had no knowledge, that appellants had made a change in the form of their notes and mortgages so as to embody a gold clause in them, or that he would be required to repay the loan in any money other than that constituting legal tender under the United States laws.

The application for the loan, referring, as it does, to other papers, to wit, the " usual form " of notes and mortgages employed in the business of appellants, and it being undisputed that the forms had been changed from those used by the parties in their previous transactions of a similar kind, without the knowledge of appellee, the question of fact arose as to what forms were intended by the parties; and parol evidence was admissible to determine that fact. When the identity of a thing referred to in a written contract is left uncertain it is proper to hear parol evidence to determine which of two things answering the description was meant by the parties.

By the 16th proposition, misnamed one of law, submitted to and held by the court, it was found and held that the forms presented to appellee for his execution were in the usual form employed by the appellants at the date of the contract; and by the 10th, 14th and 15th propositions, the court refused to hold, as a matter of law, that " your usual form," as employed in the contract, referred to the form then in use by the appellants.

It would seem, therefore, that the court must have found from the evidence that the parties' minds did not meet at all, the appellants meaning the form in use by them at that time, and the appellee meaning the form used between them in previous transactions, and hence there was no binding contract between them; or else that what was meant by the " usual form " was the form that had been used by the parties in their former transactions of a similar kind.

There was evidence that tended to support either finding, and we are not at liberty, where there was conflicting evidence, to set aside the conclusion that the court reached.

Under well settled rules of law the application, or contract, was open to parol explanation, and the question of the effect of the contract, as one of law merely, does not arise upon its face.

The facts having been found against the appellants, upon conflicting evidence, the judgment of the Circuit Court must be affirmed.